UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| In re Charles W. Fairgrieves, IV , <br><br>                Debtor. <br><br>------------------------------------------------<br><br>Mutual Management Services, Inc., <br><br>                Plaintiff, <br><br>v. <br><br>Charles W. Fairgrieves, IV, <br><br>                Defendant – Debtor. | Bankruptcy No. 09-B-71794 <br> Adversary No. 09-A-96182 <br> Chapter 7 <br><br> Judge Manuel Barbosa |

## MEMORANDUM OPINION

This matter comes before the Court on a motion to dismiss filed by defendant-debtor Charles W. Fairgrieves, IV (the "Debtor") on October 7, 2009, pursuant to Fed. R. Civ. P. 12(b)(6), made applicable by Fed. R. Bankr. P. 7012.[1] For the reasons set forth herein, the Court grants the Debtor's motion to dismiss.

## JURISDICTION AND PROCEDURE

The Court has jurisdiction to decide this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. It is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(J).

## FACTS AND BACKGROUND

The following facts and procedural history are taken from the Plaintiff's adversary complaint

---

[1] Unless otherwise noted, references to Rules herein shall be references to the Federal Rules of Civil Procedure, as incorporated by the relevant Federal Rule of Bankruptcy Procedure.

(the "Adversary Complaint") and response to the Debtor's motion to dismiss, as well as Debtor's motion to dismiss (collectively, the "pleadings"), and from all attachments to the pleadings referred to and incorporated therein. Because the matter is before the Court on a motion to dismiss, the Court accepts as true all of the factual allegations contained in the Adversary Complaint. See, e.g., Erikson v. Pardus, 551 U.S. 89, 93-94 (2007); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007).

At all relevant times, the Debtor served as "a fiduciary" of 10th Inning Bar and Grill, Inc., an Illinois corporation ("10th Inning").[2] At some time prior to August 2007, the Plaintiff initiated "litigation" against 10th Inning.[3] On August 14, 2007, the Debtor caused an auction to occur and sold the assets of 10th Inning.[4] At the time of the auction, the Debtor knew of the litigation pending against 10th Inning, and knew that "an agreed judgment was expected to be entered against said corporation within weeks." The Debtor used the funds generated from the auction to make a

---

[2]This is the only description of the relationship between the Debtor and 10th Inning contained in the Adversary Complaint. More light is shed by the Debtor's motion to dismiss. The motion to dismiss includes as an attachment the state court complaint against the Debtor, which alleges that the Debtor was at all relevant times the sole director, officer and shareholder of 10th Inning.

[3]Again, the Adversary Complaint is sparse on details. There is no indication what type of litigation was asserted against 10th Inning or the Plaintiff's relationship to 10th Inning, nor did the Plaintiff attach any state court pleadings to the Adversary Complaint. Once again, the Debtor's pleadings are more informative. The motion to dismiss includes as an attachment the state court complaint against 10th Inning, from which it appears that the Plaintiff is a collection agency which purchased a breach of contract claim against 10th Inning.

[4]In yet another omission of highly relevant information, the Adversary Complaint does not indicate, or even estimate, the amount for which the assets were sold or the value of such assets. The copy of the state court complaint against the Debtor attached to the Debtor's motion to dismiss alleges that the proceeds were $17,941.36, and that the assets "had a fair market value in excess of $15,000."

payment on a personal obligation in his own name.[5] At the time the payment was made, no judgment had been entered in the litigation against 10th Inning, but "an agreed judgment was expected to be entered against said corporation within weeks." Judgment was entered against 10th Inning on August 31, 2007, for $18,062.50 plus costs of suit. The Plaintiff at some point initiated litigation against the Debtor, and obtained a civil judgment against him individually on April 24, 2009,[6] in the amount of $19,941.36 plus costs of suit.[7] The Debtor filed a petition for relief under Chapter 7 of the Bankruptcy Code with the Court on April 30, 2009. The Plaintiff alleges that the Debtor's use of the proceeds of the auction to pay a personal debt "was a willful and malicious act to Plaintiff's detriment" and "constitutes fraud upon [10th Inning] while [Debtor] acted in a fiduciary capacity to it, to the detriment of the corporation and its creditors, including Plaintiff." The Plaintiff therefore asks that the April 24, 2009, judgment, including costs and fees, be declared nondischargeable under

---

[5]The Adversary Complaint states that the Defendant "converted" the auction proceeds. However, this assertion is an unsupported legal conclusion, and as the Supreme Court held in Ashcroft v. Iqbal, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." 129 S. Ct. 1937, 1949 (May 18, 2009). To prove conversion under Illinois law, a plaintiff must establish that "(1) he has a right to the property; (2) he has an absolute and unconditional right to the immediate possession of the property; (3) he made a demand for possession; and (4) the defendant wrongfully and without authorization assumed control, dominion, or ownership over the property." Loman v. Freeman, 809 N.E.2d 446, 461 (Ill. 2008) (citing Cirrincione v. Johnson, 703 N.E.2d 67, 70 (Ill. 1998)).

[6]The Adversary Complaint actually says "August 24, 2009," but the Plaintiff indicated in its response to the Debtor's motion to dismiss that this was a typographical error.

[7]Again the Plaintiff listed almost no details about the litigation. From the state court complaint attached to the Debtor's motion to dismiss, it appears that the Plaintiff asserted a violation of the Debtor's duty to 10th Inning under the Illinois Business Corporations Act and a violation of the Uniform Fraudulent Transfer Act. The Plaintiff attached a copy of the April 24, 2009, judgment order to its response to the Debtor's motion to dismiss, which is a default judgment. The Plaintiff did not attach the judgment to the Adversary Complaint, and has not argued that it should have any collateral estoppel effect.

11 U.S.C. § 523(a)(4) or (6).

## DISCUSSION

### Standard under 12(b)(6)

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the sufficiency of the complaint, rather than the merits of the case. Dixon v. Am. Cmty. Bank & Trust (In re Gluth Bros. Constr., Inc.), No. 09-A-96132, 2009 WL 4110122, at *3 (Bankr. N.D. Ill. Nov. 25, 2009) (citing Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990)). Under Rule 12(b)(6), a court must take as true all facts alleged in the complaint and construe all reasonable inferences in favor of the plaintiff. See Murphy v. Walker, 51 F.3d 714, 717 (7th Cir. 1995); In re Gluth Bros., 2009 WL 4110122, at *3.

The Debtor argues that the Plaintiff's Adversary Complaint does not adequately plead the claims for relief, and should therefore be dismissed under Rule 12(b)(6). Under Rule 8(a), a pleading for a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. The "Rule reflects a liberal notice pleading regime, which is intended to focus litigation on the merits of a claim rather than on technicalities that might keep plaintiffs out of court." Brooks v. Ross, 578 F.3d 574, 580 (7th Cir. Aug. 20, 2009) (citing Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002)). The focus of the Rule is to "give the defendant fair notice of what ... the claim is and the grounds upon which it rests." Brooks, 578 F.3d at 581 (citing Erickson v. Pardus, 551 U.S. 89, 93 (2007)). While this does not require "detailed factual allegations," a "formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (May 18, 2009). Instead, the complaint must contain

"enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. The plausibility standard is not a "probability standard," but it is higher than mere possibility, so the well-pleaded facts cannot be "merely consistent with a defendant's liability," but must demonstrate a plausible "entitlement to relief." Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556-57). As the Seventh Circuit Court of Appeals has stated, "courts must accept a plaintiff's factual allegations as true, but some factual allegations will be so sketchy or implausible that they fail to provide sufficient notice to defendants of the plaintiff's claim." Brooks, 578 F.3d at 581.

### Section 523(a)(4) Claim

Under Section 523(a)(4), "(a) A discharge under section 727 . . . does not discharge an individual debtor from any debt- . . . . (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny[.]" 11 U.S.C.A. § 523(a)(4) (West 2009). The meaning of these terms is a question of federal law. Delic v. Brown (In re Brown), No. 08-A-00936, 2009 WL 2461241, at *5 (Bankr. N.D. Ill. Aug. 11, 2009) (citing In re McGee, 353 F.3d 537, 540 (7th Cir. 2003)). "Fraud" for purpose of this exception has generally been interpreted as involving intentional deceit, rather than implied or constructive fraud. Brown, 2009 WL 2461241, at *5 (citing In re Tripp, 189 B.R. 29 (Bankr. N.D.N.Y. 1995); In re McDaniel, 181 B.R. 883 (Bankr. S.D. Tex. 1994); 4 COLLIER ON BANKRUPTCY 523.10[1][a] (15th ed. 2008)).

"Defalcation" is not defined in the Bankruptcy Code, but the term "defalcation" has been used in the Bankruptcy Code since 1841. Meyer v. Rigdon, 36 F.3d 1375, 1382-83 (7th Cir. 1994) (citing Central Hanover Bank & Trust Co. v. Herbst, 93 F.2d 510, 511 (2d Cir.1937)). It has

sometimes been defined by courts as the misappropriation of funds held in trust for another in any fiduciary capacity, and the failure to properly account for such funds. See In re Burke, 405 B.R. 626 (Bankr. N.D. Ill. June 10, 2009) (citing Strube Celery & Vegetable Co., Inc. v. Zois ( In re Zois ), 201 B.R. 501, 506 (Bankr. N.D. Ill.1996)). Intent to misappropriate is not required, but the misappropriation must be more than mere negligence or mistake. In re Burke, 405 B.R. at 649 (citing Meyer, 36 F.3d at 1385). The Seventh Circuit has held that defalcation requires at least reckless conduct. Meyer, 36 F.3d at 1385; Brown, 2009 WL 2461241, at *5; 4 COLLIER, 523.10[1][b].

The Plaintiff alleges that the Debtor breached his fiduciary duty to 10th Inning by using its assets for his own purposes when he caused the auction proceeds to be used to repay an indebtedness owed by himself alone. Although the Plaintiff might have been indirectly harmed by such breach, the Plaintiff, as a mere judgment creditor of 10th Inning, would not normally have standing to assert such a breach. However, in the Plaintiff's response to the Debtor's motion to dismiss and at oral argument, the Plaintiff argued that, since 10th Inning was insolvent at the time of the transfer, the Debtor, as a director of an insolvent corporation, owed a fiduciary duty to the corporation's creditors, including the Plaintiff.

Not all fiduciary relationships fall within the purview of § 523(a)(4). O'Shea v. Frain (In re Frain), 230 F.3d 1014, 1016 (7th Cir. 2000)(citing In re Woldman, 92 F.3d 546, 547 (7th Cir. 1996)). The Seventh Circuit has found that a fiduciary relationship exists for purposes of section 523(a)(4) when there is an express trust or when there is "a difference in knowledge or power between fiduciary and principal which . . . gives the former a position of ascendancy over the latter." In re

Marchiando, 13 F.3d 1111, 1116 (7th Cir. 1994); see also In re Woldman, 92 F.3d 546, 547 (7th Cir. 1996) ("[S]ection 523(a)(4) reaches only those fiduciary obligations in which there is substantial inequality in power or knowledge."). Thus, a lawyer-client relationship, a director-shareholder relationship, and a managing partner-limited partner relationship all require the principal to "repose a special confidence in the fiduciary." Burke, 398 B.R. at 625 (quoting In re Frain, 230 F.3d at 1017). A fiduciary relation qualifies under § 523(a)(4) only if it "imposes real duties in advance of the breach." In re Frain, 230 F.3d at 1017 (quoting Marchiando, 13 F.3d at 1116) (lottery agent not a "fiduciary")). Therefore, the fiduciary's obligation must exist prior to the alleged wrongdoing. Id. (citing Marchiando, 13 F.3d at 1116). Because the obligation must exist prior to the wrongdoing, a "constructive trust . . . will not qualify for purposes of § 523(a)(4)." In re Frain, 230 F.3d at 1017.

Under Illinois law, "directors ... occupy a fiduciary relation towards the creditors when the corporation becomes insolvent." Atwater v. Am. Exch. Nat'l Bank of Chicago, 152 Ill. 605, 613, 38 N.E. 1017, 1022 (1893). Thus, when "a corporation becomes insolvent, its assets are regarded as a trust fund for the payment of its creditors; and the directors, who are the agents or trustees of the stockholders during the solvency of the corporation, occupy a fiduciary relation towards the creditors when the corporation becomes insolvent." Id. A number of courts have held that such fiduciary duty to creditors can constitute a "fiduciary" relation for purposes of Section 523(a)(4). See, e.g., Newsub Magazine Serv. LLC v. Rey (In re Rey), Nos. 04-A-4446, 04-A-4443, 2005 WL 894820, at *4 (Bankr. N.D. Ill. Apr. 18, 2005); Salem Serv., Inc. v. Hussain (In re Hussain), 308 B.R. 861, 867 (Bankr. N.D. Ill. 2004); Energy Prods. Eng'g, Inc. v. Reuscher (In re Reuscher), 169 B.R. 398, 403 (S.D. Ill. 1994).

However, the Adversary Complaint does not allege that 10th Inning was insolvent at the time of the transfer. The Plaintiff only first raised its argument that 10th Inning was insolvent in its response to the Debtor's motion to dismiss. Even then, the Plaintiff offered no factual allegations to support the assertion. Nor did it give any indication as to when the corporation became insolvent - whether it claimed that 10th Inning was insolvent prior to the auction or transfer, or was only made insolvent by the auction or transfer.[8] At oral argument, the Plaintiff contended that it had alleged insolvency when it alleged that the Debtor sold the assets of 10th Inning at an auction. But, the mere sale of assets does not indicate insolvency. Insolvency means the company's liabilities exceed its assets. If the proceeds of the sale exceeded the company's debts, then it would still be solvent even after the sale. There is no indication from any of the pleadings what debts 10th Inning owed, other than the state court litigation claim by the Plaintiff, which was unliquidated at the time of the Debtor's actions. Illinois law is clear that "so long as a corporation remains solvent, its directors . . . owe no duties or obligations" to anyone other than the corporation and its shareholders, and owe no duties to protect creditors. In re Hussain, 308 B.R. at 867 (quoting Technic Eng'g, Ltd. v. Basic Envirotech, Inc., 53 F. Supp. 2d 1007, 1010 (N.D. Ill. 1999)). The Plaintiff has offered no other reason why the Debtor would have owed a fiduciary duty to the Plaintiff, and since it failed to allege or support an allegation that 10th Inning was insolvent, its argument under Section 523(a)(4) must fail.

The Plaintiff also for the first time mentioned its claim of embezzlement in its response to

---

[8] Given the Seventh Circuit's holding in In re Frain that Section 523(a)(4) applies only to fiduciary duties that exist prior to the purported wrongdoing, the timing of the insolvency is potentially relevant.

the Debtor's motion to dismiss. Bankruptcy courts define embezzlement as the "fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come." In re Weber, 892 F.2d 534, 538-39 (7th Cir. 1989) (quoting Moore v. United States, 160 U.S. 268, 269, 16 S. Ct. 294, 295, 40 L. Ed. 422 (1895)). To prove embezzlement, the creditor must show by clear and convincing evidence that (1) the debtor appropriated funds for his or her own benefit; and (2) the debtor did so with fraudulent intent or deceit. Id. (citing In re Taylor, 58 B.R. 849, 855 (Bankr.E.D.Va.1986); In re James, 42 B.R. 265, 267 (Bankr. W.D. Ky. 1984); In re Storms, 28 B.R. 761, 765 (Bankr. E.D.N.C. 1983); In re Graziano, 35 B.R. 589, 595 (Bankr. E.D.N.Y. 1983)). It may be that the Debtor appropriated funds of 10th Inning for his own benefit, but the Plaintiff has no standing to assert the rights of 10th Inning. Nor does the Plaintiff assert that it had a direct interest in the equipment sold or proceeds thereof. Even a security interest does not rise to a level of ownership sufficient to support a claim for embezzlement fo purposes of Section 523(a)(4), In re Whiters, 337 B.R. 326, 333 (Bankr. N.D. Ind. 2006) (citing First Nat'l Bank v. Phillips (In re Phillips), 882 F.2d 302, 304-305 (8th Cir.1989)); see also Bombardier Capital, Inc. v. Dobek (In re Dobek), 278 B.R. 496, 510 (Bankr. N.D.Ill. 2002), and the Plaintiff was only an unsecured claimant with a claim that had not yet been reduced to judgment. If a security interest is not sufficient to support a claim of embezzlement, then the Plaintiff's rights as an unsecured creditor are certainly not sufficient.

**Section 523(a)(6) Claim**

Section 523(a)(6) provides that: "(a) A discharge under section 727 . . . does not discharge

an individual debtor from any debt- . . . . (6) for willful and malicious injury by the debtor to another entity or to the property of another entity[.]" 11 U.S.C. § 523(a)(6). To determine the nondischargeability of a debt under section 523(a)(6), a creditor must prove three elements by a preponderance of the evidence: (1) the debtor intended to and caused an injury to the creditor's property interest; (2) the debtor's actions were willful; and (3) the debtor's actions were malicious. In re Burke, 398 B.R. 608, 625 (Bankr. N.D. Ill. 2008)(citing Baker Dev. Corp. v. Mulder (In re Mulder), 307 B.R. 637, 641 (Bankr. N.D. Ill. 2004); Glucona Am., Inc. v. Ardisson (In re Ardisson), 272 B.R. 346, 356 (Bankr. N.D. Ill. 2001)). The requirements of "willfulness" and "maliciousness" are distinct requirements in the statutory text and are usually treated as such by the courts. In re Brown, 2009 WL 2461241, at *7 (citing 4 COLLIER, 523.12[2]; Carrillo v. Su (In re Su), 290 F.3d 1140 (9th Cir. 2002)).

"The word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." Burke, 398 B.R. at 625 (quoting Kawaauhau v. Geiger, 523 U.S. 57, 61 (1998)). Under Geiger and its stringent standards, to satisfy the requirements of § 523(a)(6), a creditor must plead and prove that the debtor actually intended to harm him and not merely that the debtor acted intentionally and he was thus harmed. Burke, 398 B.R. at 625-26 (citing Geiger, 523 U.S. at 61-62). Thus, the debtor must have intended the tortious consequences of his act. Burke, 398 B.R. at 626 (citing Geiger, 523 U.S. at 61-62; Berkson v. Gulevsky (In re Gulevsky), 362 F.3d 961, 964 (7th Cir. 2004)). Injuries either negligently or recklessly inflicted do not come within the scope of § 523(a)(6). Id. (citing Geiger, 523 U.S. at 64).

The Supreme Court did not define the scope of the term "intent" utilized to describe willful conduct. Recent decisions, however, have found that either a showing of subjective intent to injure the creditor or a showing of a debtor's subjective knowledge that injury is substantially certain to result from his acts can establish the requisite intent required by Geiger. Burke, 398 B.R. at 626 (citing Markowitz v. Campbell (In re Markowitz), 190 F.3d 455, 463-65 (6th Cir. 1999); Tex. By & Through Board of Regents of Univ. of Tex. Sys. v. Walker, 142 F.3d 813, 823 (5th Cir.1998); Su v. Carrillo (In re Su), 259 B.R. 909, 913 (B.A.P. 9th Cir. 2001), aff'd, 290 F.3d 1140 (9th Cir. 2002); Fidelity Fin. Servs. v. Cox (In re Cox), 243 B.R. 713, 719 (Bankr. N.D. Ill. 2000)). But see Miller v. J.D. Adams, Inc. (In re Miller), 156 F.3d 598 (5th Cir. 1998) (employing an objective standard under which the "willfulness" requirement is satisfied if there is either a subjective intent to cause injury or an objective certainty that the conduct will cause injury). Because a person will rarely admit to acting in a willful and malicious manner, those requirements must be inferred from the circumstances surrounding the injury. Burke, 398 B.R. at 626 (citing Cutler v. Lazzara (In re Lazzara), 287 B.R. 714, 723 (Bankr. N.D. Ill. 2002)).

An act is "malicious" if it is taken "in conscious disregard of one's duties or without just cause or excuse. . . ." Burke, 398 B.R. at 626 (quoting Thirtyacre, 36 F.3d at 700). The test for maliciousness under § 523(a)(6) is (1) a wrongful act, (2) done intentionally, (3) which causes injury to the creditor, and (4) is done without just cause and excuse. Id. (citing Paul, 266 B.R. at 696); see also Thirtyacre, 36 F.3d at 700. A debtor does not have to act with ill will or a specific intent to do harm to the creditor for the conduct to be malicious. Burke, 398 B.R. at 626 (citing Thirtyacre, 36 F.3d at 700).

"Injury" means the violation of another's legal right or the infliction of an actionable wrong. Bukowski v. Patel, 266 B.R. 838, 844 (E.D. Wis. 2001) (citing BLACK'S LAW DICTIONARY 785-86 (6th ed.1990)). Injuries covered under section 523(a)(6) are not confined to physical damage or destruction; an injury to intangible personal or property rights is sufficient. See id. (citing In re Riso, 978 F.2d 1151 (9th Cir. 1992) (contract rights); In re Rushing, 161 B.R. 984 (Bankr. E.D. Ark. 1993) (real property)); see also 4 COLLIER, 523.12[4].

The Plaintiff argues that the Debtor willfully and maliciously injured it by causing 10th Inning to liquidate its assets and then to fraudulently transfer the proceeds to the Debtor or the Debtor's creditor. An initial problem with the Adversary Complaint is that it merely states a legal conclusion, and therefore fails the pleading standard set forth in Twombly and Iqbal. There is no allegation that the Debtor intended to specifically harm the Plaintiff by conducting the auction or by transferring the proceeds. The Adversary Complaint merely states that the Debtor's transfer of the assets "was a willful and malicious act to Plaintiff's detriment." From the Adversary Complaint, it appears the Debtor's intent was simply to pay an obligation to one of his creditors. Nor is there an allegation that harm to the Plaintiff was substantially certain to result from the Debtor's actions or that the Debtor was aware of that fact. For example, to the extent that 10th Inning had other creditors, then the Plaintiff's inability to be repaid in full on its claim may not have been caused by the Debtor's actions. Similarly, the elements of malice are not alleged or supported by factual allegations. For example, there is no allegation that the Debtor did not have the right to cause the transfer of proceeds to himself. The Debtor was the sole shareholder of the corporation, and the Plaintiff has not explained why the corporation could not make a lawful distribution to him.

From the Plaintiff's response to the motion to dismiss and oral argument, it appears that the Plaintiff wishes to argue that the Debtor's transfer of the proceeds was a willful and malicious injury because it was a fraudulent transfer. A fraudulent transfer which is merely constructively fraudulent will not satisfy Section 523(a)(6), which requires proof of intent to harm and proof of malice. However, a fraudulent transfer based on actual intent to hinder, delay, or defraud a creditor can support a Section 523(a)(6) claim. While one 9th Circuit Court of Appeals case held that a fraudulent transfer claim could not support a Section 523(a)(6) claim because a purported 'property interest' in "the fraudulent transfer remedies provided by state law does not fit within the definitions of either 'debt' or 'property' for purposes of section 523(a)(6)," Quarre v. Saylor (In re Saylor), 108 F.3d 219, 221 (9th Cir. 1997) (affirming and adopting the reasoning of In re Saylor, 178 B.R. 209, 212-15 (9th Cr. B.A.P. 1995)), in that case the plaintiff had not obtained an actual judgment of fraudulent transfer prior to the debtor's bankruptcy petition. See McClellan v. Cantrell, 217 F.3d 890, 899 n.1 (7th Cir. 2000) (Ripple, J. concurring) (distinguishing In re Saylor because the plaintiff in Saylor had not obtained a judgment prior to the defendant's petition and because, unlike Saylor, the creditor in Cantrell was a secured creditor); McCain Foods USA, Inc. v. Shore (In re Shore), 305 B.R. 559, 569 (Bankr. D. Kan. 2004), aff'd, 317 B.R. 536 (10th Cir. B.A.P. 2004) ("Saylor addresses a very different set of facts. The creditor in Saylor did not have a UFTA judgment against the debtor that it was attempting to except from discharge."). In contrast, here the Plaintiff has already obtained a judgment against the Debtor for a fraudulent transfer, so the Plaintiff could demonstrate a willful and malicious injury of it or its property under Section 523(a)(6) if it demonstrated actual fraud. The Plaintiff supports its argument of actual intent with factual allegations of several of the so-called

"badges of fraud." The Adversary Complaint included allegations that: 1) the transfer was to an insider, 2) before the transfer was made, the corporation had been sued, and 3) 10th Inning removed assets. However, these allegations by themselves are not sufficient to support the "plausibility" standard set forth in Iqbal. In the response to the motion to dismiss and at oral argument, the Plaintiff added additional allegations that: 4) the transfer was of substantially all of 10th Inning's assets, 5) 10th Inning was insolvent or became insolvent shortly after the transfer was made, and 6) the auction and transfer were concealed from the Plaintiff. These additional facts may make the Plaintiff's argument plausible, but were not alleged in the Adversary Complaint.

**The Relation to the Debt**

The Debtor argues that, for purposes of Section 523(a)(6) and (4), the purported wrongdoing must have occurred as part of the creation of the debt, and argues that the debt at issue arose out of a simple breach of contract between 10th Inning and the predecessor-in-interest to the Plaintiff. However, unlike Section 523(a)(2), Sections 523(a)(4) and (6) refer to "debt" and not necessarily the extension of money, property or services. "Debt" is defined by the Bankruptcy Code as "liability on a claim," 11 U.S.C. § 101(12), and "claim" is defined broadly as any "A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured." 11 U.S.C. § 101(5). Therefore, the "debt"

Page 14 of 15

which the Plaintiff asks to be declared non-dischargeable is not the "debt" incurred by 10th Inning's breach of its contract, but rather is the debt created by the Debtor's fraud against the Plaintiff by causing the assets to be sold and transferred. See, e.g. McClellan v. Cantrell 217 F.3d at 895 ("The debt at issue here is the debt that the sister incurred to McClellan by committing a fraud against him. Because it was an actual fraud, the debt that it gave rise to is not dischargeable."). Such a debt, if created by actual fraud, could support a claim for non-dischargeability, but was not sufficiently plead or supported with factual allegations.

## CONCLUSION

For the foregoing reasons, the Court grants Debtor's motion to dismiss both counts, but grants leave for the Plaintiff to file an amended adversary complaint within thirty days consistent with this opinion..

THEREFORE, IT IS ORDERED that

A separate order shall be entered pursuant to Fed. R. Bankr. P. 9021 giving effect to the determinations reached herein.

DATE: January 25, 2010

The Honorable Manuel Barbosa
United States Bankruptcy Judge